IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Todd Shepherd and Broad   :
and Liberty, Inc.,      :
           :
      Petitioners :
           :
    v.      : No. 954 C.D. 2024
           : Submitted: April 3, 2025
Pennsylvania Office of the Governor :
(Office of Open Records),   :
           :
      Respondent :

BEFORE:  HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE CHRISTINE FIZZANO CANNON, Judge
      HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK         FILED: May 6, 2025

    Todd Shepherd and Broad and Liberty, Inc. (Petitioners) petition for review from the July 15, 2024 final determination of the Office of Open Records (OOR) granting in part and denying in part their appeal from the refusal of the Pennsylvania Office of the Governor (Office) to produce records they requested pursuant to the Right-to-Know Law (RTK Law or Law).[1]  For the reasons that follow, we reverse and remand for proceedings consistent with the following memorandum opinion.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

## BACKGROUND

On March 28, 2024, Petitioners requested the following documents from the Office:

> [A] copy of all emails or text messages (including attachments) from Feb[ruary] 14, 2023, to and including March 14, 2023, exchanged between the following persons:
>
> Mike Vereb and Brianda Freistat, and Freistat to Vereb;
> Dana Fritz to Gov[ernor] Josh Shapiro, and Shapiro to Fritz;
> Dana Fritz to Larry Halisham, and Halisham to Fritz;
> Larry Halisham to Gov[ernor] Josh Shapiro, and Shapiro to Halisham;
> Dana Fritz to Mike Vereb, and Vereb to Fritz;
> Larry Halisham to Vereb, and Vereb to Halisham;
> Gov[ernor] Josh Shapiro to Mike Vereb, and Vereb to Shapiro;
> Gov[ernor] Josh Shapiro [to] Neil Weaver, and Weaver to Shapiro;
> Larry Halisham to Neil Weaver, and Weaver to Halisham;
> Dana Fritz to Neil Weaver, and Weaver to Fritz;
> Mike Vereb to Ak[]bar Hossain, and Hossain to Vereb;
> Dana Fritz to Ak[]bar Hossain, and Hossain to Fritz;
> Larry Halisham to Ak[]bar Hossain, and Hossain to Halisham;
> Adrienne Muller to Mike Vereb, and Vereb to Muller;
> Adrienne Muller to Larry Halisham, and Halisham to Muller;
> Adrienne Muller to Dana Fritz, and Fritz to Muller;
> Adrienne Muller to Brianda Freistat, and Freistat to Muller.
>
> This [R]equest should not be interpreted such that a request for emails between Person X and Person Y be limited to those communications in which those two persons are the only persons included in the communication thread.

2

Finally, . . . all emails inbound or outbound for the email account for Brianda Freistat for the dates of March 2, 2023, to and including March 8, 2023.

OOR Opinion at 1 (footnote omitted).[2]

After receiving an extension of time to respond, the Office denied the Request, asserting that it is insufficiently specific pursuant to Section 703 of the RTK Law, 65 P.S. §67.703.[3]  Petitioners appealed to the OOR, and the OOR invited the parties to supplement the record.  On May 28, 2024, the Office submitted a position statement reiterating its argument that the Request is insufficiently specific.

## OOR DECISION

The OOR observed that when determining whether a particular request is sufficiently specific, it must use the three-part balancing test set forth in *Pennsylvania Department of Education v. Pittsburgh Post-Gazette*, 119 A.3d 1121 (Pa. Cmwlth. 2015), which examines the subject matter of the request; the scope of the documents sought; and the timeframe for which the records are sought.  Here, the OOR noted, the Request does not identify a subject matter.  The scope of the Request encompasses all emails and text communications, including where the

---

[2] The OOR's opinion can be found on page 27a of Petitioners' Reproduced Record (R.R.).

[3] Section 703 of the RTK Law provides in pertinent part:

A written [RTK Law] request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested and shall include the name and address to which the agency should address its response.  A written request need not include any explanation of the requester's reason for requesting or intended use of the records unless otherwise required by law.

65 P.S. §67.703.

individuals were part of a communication thread involving a wider distribution list. Finally, the timeframe is for a period of 30 days. The OOR recognized that

> [t]he lack of a subject matter alone is not cause to find that a Request is insufficiently specific, but it does mean that the scope and timeframe of the Request must be sufficiently limiting to permit the agency to conduct a search for the records. The scope is limited as to types of record[s] sought—emails and text messages without limitation—and fairly narrow as to the number of employees from whom records are sought, encompassing only [8] individuals and only a certain subset of communications between those individuals. Finally, a [30]-day timeframe is relatively limited, which means that the scope of the Request and the narrow timeframe do provide the Office with a certain amount of guidance.

OOR Opinion at 4.

The OOR compared the instant Request to the requests in *Pennsylvania Office of Governor v. Brelje*, 312 A.3d 928 (Pa. Cmwlth. 2024), and *Keystone Nursing and Rehab of Reading, LLC v. Office of Open Records (Simmons-Ritchie)* (Pa. Cmwlth., No. 161 C.D. 2018, filed January 3, 2020).[4] The OOR noted that in *Brelje*, this Court "considered how a set of similar factors should be weighed." OOR Opinion at 4. In *Brelje*, the requests sought incoming and outgoing emails for two of the Office's staff, 1 for 10 days and the other for 20 days. *Brelje*, 312 A.3d at 930. The OOR held that the requests were sufficiently specific despite the lack of a subject matter because of the narrow scope and short timeframes. On appeal, this Court agreed, discussing in detail the history of this Court's "sufficient specificity" jurisprudence.

---

[4] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

Here, the Office argued that Petitioners' Request is broader than the request in *Brelje* because it involves more individuals and a longer timeframe. The OOR stated:

> This comparison is not entirely apt; the request in *Brelje* sought all emails sent and received by two employees, whereas the Request seeks only emails exchanged between the listed employees, narrowing the scope to some degree. Nevertheless, it is not lost on the OOR that *Brelje* sought communications from employees in the Office's press office, whereas the instant Request encompasses [30] days of communications at the highest levels of the state government.
>
> The subjects of the instant Request are relevant here considering the analysis in *Keystone Nursing*, where a request which sought "all correspondence" of several officials for 48 days was found insufficiently specific. In so deciding, the Commonwealth Court emphasized the fact that the request included the Acting Secretary of Health, as well as some of the most senior members of the Department of Health, and that the request would inevitably involve larger quantities of confidential and sensitive information and deliberation than a request of a similar scope would if directed to a school board. However, as the Court emphasizes in *Brelje*, another important fact which led to the decision in *Keystone Nursing* was the separate scope of the request which sought ["]correspondence["] rather than specific types of records.

OOR Opinion at 5 (citations omitted). The OOR noted that here, the Request's scope is more specific than in *Keystone Nursing* but less specific than the requests in *Brelje*. Furthermore, the Request's timeframe is longer than *Brelje*'s but shorter than *Keystone Nursing*'s. The OOR found the following commentary in *Brelje* to be instructive:

5

> [T]he General Assembly specifically couched the sufficient specificity requirement within a concern that the request "enable the agency to ascertain which records are being requested." [Section 703 of the RTK Law]. As a matter of common sense, it is hard to conceive of a scenario where we could reasonably conclude that a request seeking emails from two specific people, over the course of less than a month, would be insufficient to enable an agency to figure out precisely what the requester was seeking. This certainly does not amount to a "fishing expedition." *Pittsburgh Post-Gazette*, 119 A.3d at 1126.

OOR Opinion at 6 (quoting *Brelje*, 312 A.3d at 939-40). The OOR emphasized, however, that in this case, Petitioners' Request "is seeking emails and text messages between the Governor and high-ranking administration officials rather than a set of emails to and from press officers." *Id.* It stated:

> Although the Court's occasional characterizations of various requests as "fishing expeditions" are not part of the test the OOR must apply, it is difficult to avoid the conclusion here that the Request is not so much seeking any particular document as it is casting a wide net for interesting material. Therefore, the OOR is constrained to hold that the Request is insufficiently specific in part.

*Id.*

The OOR proceeded to find the portion of the Request that seeks "all emails inbound or outbound for the email account for Brianda Freistat for the dates of March 2, 2023, to and including March 8, 2023[,]" to be sufficiently specific. Per the OOR, that part of Petitioners' Request is "plainly narrower" than the requests found to be specific in *Brelje* because it encompasses only emails, only a single employee, and only a seven-day timeframe. OOR Opinion at 7. Furthermore, to the extent the Office represented on appeal that no records responsive to this part of the

6

Request existed, the OOR held that it constituted an admission that the Office was able to conduct a search for the records.[5] Petitioners now appeal to this Court.[6]

**DISCUSSION**

We begin our analysis with a brief overview of the RTK Law. This Court has stated that the general objective of the RTK Law is "to empower citizens by affording them access to information concerning the activities of the government." *Feldman v. Pennsylvania Commission on Crime and Delinquency*, 208 A.3d 167, 171 (Pa. Cmwlth. 2019) (quoting *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012)). Courts should liberally construe the RTK Law to

[5] The OOR further noted that the Office did not submit a sworn affidavit or attestation but did submit a position statement that was made pursuant to the penalties of Section 4904 of the Crimes Code, 18 Pa. C.S. §4904, relating to unsworn falsifications to authorities. The OOR found the Office's position statement to be conclusory and lacking in any factual detail upon which the OOR could conclude that a good faith search had been conducted. As a result, the OOR concluded that the Office did not meet its burden to show there were no records responsive to the request for all emails inbound or outbound for the email account for Brianda Freistat for the dates of March 2, 2023, to and including March 8, 2023. The OOR directed the Office provide all emails responsive to this portion of Petitioners' RTK Law request or a detailed attestation confirming the nonexistence of such records.

[6] In *Brelje*, we discussed our standard and scope of review in RTK Law appeals as follows:

> Pursuant to Chapter 13 of the [RTK Law], with respect to appeals relating to decisions of Commonwealth agencies, this Court is the ultimate factfinder in [RTK Law] disputes. Accordingly, we owe no deference to the OOR's legal analysis or factfinding, as our standard of review of a final determination of the OOR is [*de novo*]. In addition, we are entitled to the broadest scope of review, covering all justiciable issues raised and presented below. Unlike in other administrative agency contexts, we may substitute our own findings of fact for that of the agency. We have the discretion to conduct a hearing, or to remand to the OOR, to supplement the record.

312 A.3d at 932 (internal quotations and citations omitted).

7

effectuate its purpose of promoting access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions. *Office of General Counsel v. Bumsted*, 247 A.3d 71, 76 (Pa. Cmwlth. 2021).

Under the RTK Law, "records are presumed to be public records, accessible for inspection and copying by anyone requesting them, and must be made available to a requester unless they fall within specific, enumerated exceptions or are privileged." *Feldman*, 208 A.3d at 171. The exceptions to disclosure of public records must be narrowly construed due to the RTK Law's remedial nature. *California Borough v. Rothey*, 185 A.3d 456, 465 (Pa. Cmwlth. 2018).

The RTK Law defines a public record as "[a] record . . . of a Commonwealth or local agency that: (1) is not exempt under [S]ection 708 [of the RTK Law, 65 P.S. §67.708]; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." Section 102 of the RTK Law, 65 P.S. §67.102. Pursuant to Section 305(a) of the RTK Law, 65 P.S. §67.305(a), a record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. Section 305(a) provides, however, that the presumption will not apply if "(1) the record is exempt under Section 708; (2) the record is protected by a privilege; or (3) the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree." *Id.* "The burden of proving that a record of a Commonwealth or local agency is exempt from public access shall be on the Commonwealth agency or local agency . . . by a preponderance of the evidence." Section 708(a)(1) of the RTK Law, 65 P.S. §67.708(a)(1).

8

Petitioners first challenge the OOR's conclusion that their Request was insufficiently specific. Petitioners note that upon receipt of a request, an agency's open records officer must "make a good faith effort to determine whether: (1) the record is a public record; and[] (2) the record is in the possession, custody, or control of the agency." Petitioners' Brief at 15 (quoting *Uniontown Newspapers, Inc. v. Pennsylvania Department of Corrections*, 185 A.3d 1161, 1171 (Pa. Cmwlth. 2018)). Moreover, Section 901 of the RTK Law, 65 P.S. §67.901, requires the open records officer to perform a reasonable search for records in good faith.[7]

Petitioners observe that following their submission of the RTK Law Request, the Office responded via a letter dated April 4, 2024. In the letter, Marc Eisenstein, the Office's Open Records Officer, states that

> the Office has begun the process of identifying records that may be responsive to your [R]equest. The extent of your [R]equest, however, precludes a response within five business days as required by [the RTK Law]. Once the records, if any, are identified, a legal review is necessary to determine if any or all of the information is subject to

---

[7] Section 901 of the Law states:

Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the circumstances existing at the time of the request. All applicable fees shall be paid in order to receive access to the record requested. The time for response shall not exceed five business days from the date the written request is received by the open[ ]records officer for an agency. If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.

65 P.S. §67.901.

> redaction and/or public access pursuant to provisions of the [RTK Law]. Consequently, this Office is securing an extension of time to respond to your [R]equest . . . .
>
> * * *
>
> After assembling the information and conducting a legal review, this Office will notify you of the availability of records that are responsive to your [R]equest . . . .

Eisenstein Letter, 4/4/2024, Reproduced Record (R.R.) at 7a.

Petitioners argue that the language of the letter reflects that, as of April 4, 2024, the Office had begun the process of identifying records that are possibly responsive to the Request. Petitioners emphasize that the Office's initial response to their Request did not indicate that the Office did not understand what records are being requested or, for that matter, reflect that Petitioners' Request is insufficient in any respect. To the contrary, Petitioners contend that the letter confirmed that the Office had already begun the process of identifying records that are potentially responsive to the Request. Thus, Petitioners assert, the statements in the letter constitute an admission that the Office understood what records are being requested and that the Office waived its right to later assert that the Request was insufficiently specific.[8] Finally, to the extent the OOR expressed concern that Petitioners' RTK Law Request seeks texts and emails from high-ranking governmental officials and appears to be "casting a wide net for interesting material," OOR Opinion at 6, Petitioners point out that Section 703 of the RTK Law clearly prohibits an agency, and by extension the OOR, from considering a requester's reason for requesting or intended use of records.

---

[8] Petitioners further opine that if their Request is insufficiently specific, the Office would not have known that it needed additional time to respond to the request or been able to determine that legal review was necessary.

The Office responds that the RTK Law does not provide that an agency can waive a requester's "fundamental failure to provide a sufficient request merely by responding in five days as required by law." Office's Brief at 7. The Office notes that in *Commonwealth v. Engelkemier*, 148 A.3d 522, 532 n.10 (Pa. Cmwlth. 2016), this Court, citing *Pittsburgh Post-Gazette*, 119 A.3d at 1126 n.8, recognized that an agency's identification of potentially responsive records is not sufficient to satisfy Section 703 of the RTK Law.

Undoubtedly, Petitioners have presented a novel argument. We are not inclined, however, to rule in their favor. In essence, Petitioners ask this Court to countenance a game of "gotcha" at the very preliminary stages of a RTK Law request. When RTK Law cases are in their infancy, agencies should be given a wide berth to perform their good faith search for potentially responsive records in the extremely limited five-day timeframe provided by Section 901 of the Law. The Office's statement that it had "begun the process of identifying records that may be responsive to [Petitioners'] [R]equest" simply cannot be considered the equivalent of an admission that the RTK Law Request is sufficiently specific. This defies common sense. It is eminently reasonable to foresee that an agency could begin the process of attempting to identify records only to later realize that a RTK Law request, as phrased, is not sufficiently specific. Without more, we cannot say that the Office's conduct during the preliminary stages of the Request reflect an admission that Petitioners' Request is sufficiently specific.

Next, Petitioners question how the OOR could, on the one hand, conclude that their Request for "all emails inbound or outbound for the email account for Brianda Freistat for the dates of March 2, 2023, to and including March 8, 2023[,]" is sufficiently specific, yet on the other hand, conclude that the remainder

11

of their Request, seeking all emails or text messages from a finite number of individuals from February 14, 2023, to and including March 14, 2023, is insufficiently specific.

Petitioners also underscore that, with regard to their request for the Brianda Freistat emails between the dates of March 2, 2023, to and including March 8, 2023, the Office's position statement indicated that "[w]hile similarly insufficiently specific, the Office does not possess records responsive to this final portion of the [R]equest seeking all of Ms. Freistat's emails for a one[-]week period." Office's Position Statement, 5/28/2024, at 1 n.1, R.R. at 23a. Petitioners argue that "[d]espite [the Office's] admission that this portion of the Request [is] sufficiently specific enough for [the Office] to conduct a good faith search for the records, [the OOR] failed to require or consider how one portion of the Request [is] sufficiently specific while the other portions of the Request [are] insufficiently specific." Petitioners' Brief at 25. Petitioners assert that once the Office acknowledged that Petitioners' Request is sufficiently specific to enable the Office to conduct a good faith search for responsive records between the dates of March 2, 2023, and March 8, 2023, it bears to reason that Petitioners' Request is sufficiently specific for the Office to conduct a search for a marginally longer period between February 14, 2023, and March 14, 2023.

The Office retorts by comparing the facts of the instant action to those in other cases discussing the specificity of RTK Law requests. At the outset, the Office observes that in *Keystone Nursing*, the requester sought the records of four individuals, while the Request in this case seeks records from at least eight individuals. Moreover, unlike the more specific requests in *Brelje*, the instant Request seeks records over a four-week period. Furthermore, unlike *Brelje*,

Petitioners' Request not only seeks emails but also text messages and other attachments.

The Office asserts that the instant action is "more analogous" to *Keystone Nursing*, where the request encompassed high-level agency officials, including the Secretary of the Pennsylvania Department of Health (Department) and the Department's Press Secretary. Office's Brief at 9. The Office maintains that, similar to this matter, the RTK Law request in *Keystone Nursing* failed to specify any subject matter. Although the OOR found the request in *Keystone Nursing* to be sufficiently specific, the Office emphasizes that this Court reversed in light of *Pittsburgh Post-Gazette*.

The Office focuses on the portion of the *Keystone Nursing* opinion where we observed that "the secretary of a state agency is likely to send and receive more communications in a 30-day time period than a member of a local school board and that these communications are likely to contain exempt information." *Keystone Nursing*, slip op. at 41. The Office highlights that the *Keystone Nursing* Court determined that the request placed an unreasonable burden on the Department "to compile **all correspondence** sent and received by the highest tier of employees at Department 'without knowing, with sufficient specificity, what [ ] business or activity the request is related.'" *Id.* (emphasis in original) (quoting *Mollick v. Township of Worcester*, 32 A.3d 859, 871 (Pa. Cmwlth. 2011)). The Office posits that graver concerns are raised here because the employees who are the subject of Petitioners' RTK Law Request "even more so than [the employees] in *Keystone Nursing*, engage in business that relates to any or all of the Commonwealth's functions." Office's Brief at 12. Coupled with Petitioners' "fail[ure] to articulate or identify *any* program or topic about which responsive records may be provided[,]"

13

the Office maintains that the OOR properly concluded that Petitioners' Request is insufficiently specific. Office's Brief at 12 (emphasis in original).

The Office easily rebuts Petitioners' assertion that if their RTK Law Request is sufficiently specific for the Office to search for one week of Brianda Freistat's emails, the remainder of the Request must also be considered sufficiently specific. The Office theorizes it is "rather simple for an agency to specifically determine whether it continues to maintain the records held in the custody of a single employee for a period of one week." Office's Brief at 13. The same cannot be said, however, for the remainder of the Request that seeks "permutations of records from [eight] (mostly current) high-ranking officials for quadruple the time." *Id.* The Office concludes that the OOR correctly determined that the remainder of Petitioners' RTK Law Request is insufficiently specific and asks that we affirm the OOR's determination.

Determining whether a RTK Law request is sufficiently specific is not an easy task. Each case, on its own, presents unique facts that must be considered in light of the test set forth in *Pittsburgh Post-Gazette*. If nothing else, this Court's comprehensive and meticulous historical discussion of "sufficient specificity" jurisprudence in *Brelje* reflects that no one factor of the *Pittsburgh Post-Gazette* test is dispositive and that "we must not ignore the case-by-case nature of this inherently fact-sensitive inquiry." *Brelje*, 312 A.3d at 938.

When there is a sufficient specificity challenge under Section 703 of the RTK Law, *Pittsburgh Post-Gazette* requires us to examine the extent to which the request "sets forth (1) the subject matter of the request; (2) the scope of documents sought; and (3) the timeframe for which records are sought." *Id.*, 119

14

A.3d at 1124. Here, the Office does not dispute that Petitioners' Request is limited in scope (emails and text messages of 8 individuals) and short in duration (30 days).

Nor does the Office appear to take issue with the holdings of this Court that the lack of a subject matter in a RTK Law request does not necessarily dictate that a request is insufficiently specific. *See Easton Area School District v. Baxter*, 35 A.3d 1259, 1265 (Pa. Cmwlth. 2012) (request seeking all emails sent and received by nine school board members, the school district superintendent, and the general school board email address for a 30-day period held to be sufficiently specific because request was focused on a specific type of record (emails) within a finite period from a limited number of email addresses);[9] *Methacton School District v. Office of Open Records* (Pa. Cmwlth., No. 250 C.D. 2021, filed December 28, 2021), slip op. at 3-4 (request seeking all emails sent and received by four school district employees during four separate one-month spans held to be sufficiently specific. This Court observed there is no bright-line rule absolutely requiring a requester to precisely identify the subject matter of the requested record and the absence of a stated subject matter is but one factor to consider.);[10] *Brelje*, 312 A.3d at 938-39 (although the requests did not focus on a particular transaction or activity in a strict sense, they did focus on two specific individuals which served to limit subject matter. The Court also recognized that communication via email is, as a matter of plain language, an activity of the Office.). Rather, the Office focuses on the *identity* of the individuals from whom the records are sought, implying that

---

[9] Admittedly, in *Baxter*, the school district had also identified records potentially responsive to the request. That was, however, among a number of factors the Court considered in determining whether the request was sufficiently specific.

[10] The school district in *Methacton* was also able to identify documents responsive to the RTK Law request; however, as in *Baxter*, this was but one of the factors that led the Court to find the request to be sufficiently specific.

15

because they are high-ranking government officials, the Request should be considered insufficiently specific and burdensome.

We are not persuaded by the Office's argument. The RTK Law request in *Keystone Nursing* sought "[a] copy of *all correspondence* sent and received (including text messages and written memos)" by the Acting Secretary of the Department, the Department's Communications Director and a Department Press Secretary for a 48-day period. *Id.*, slip op. at 4. (emphasis added). The request was found to be insufficiently specific because it sought *all correspondence* through all mediums, electronic and written, sent and received in a 48-day timeframe. While the *Keystone Nursing* Court did comment on the burdensome nature of the request due to high-ranking positions of the individuals from whom the information was sought, it was the *scope of the request*, not the identity of the government officials, that resulted in the finding of insufficient specificity.

In *Methacton*, this Court aptly observed that "[a]t the end of the day, all that Section 703 of [the RTK Law] requires is that a written request 'identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested . . . .'" *Id.*, slip op. at 4 (quoting Section 703 of the RTK Law). That is what has occurred in this case. We agree with Petitioners that if their Request is sufficiently specific for the Office to identify one week of Brianda Freistat emails, it logically follows that the Request is sufficiently specific to identify emails, text messages, and attachments for eight individuals for a one-month period.[11]

_____

[11] We remind the Office that while it may believe it is burdensome to search one month's worth of emails and text messages received by the eight individuals, some but not all of whom are considered high-ranking government officials, the fact that a request is burdensome "does not itself render the request not specific." *Greim v. Pennsylvania State Police (Office of Open Records)*, **(Footnote continued on next page…)**

16

If nothing else, we must remain vigilant to ensure that the objectives of the RTK Law are met. Access to information concerning the activities of the government does not hinge on the identity of the individual from whom records are sought. The Governor and other individuals in the Office cannot avoid a RTK Law request simply because they are high-ranking officials who transact large amounts of business on behalf of the citizens of the Commonwealth. Simply stated, the Governor and the employees in the Office stand in the same shoes as any other government official who is the subject of a RTK Law request.

With that said, the Office clearly must be given the opportunity to identify responsive records and make exemption determinations. Our review of the record reflects that the position statement the Office submitted to the OOR asked that "should the OOR find that [Petitioners' Request] is sufficiently specific, the Office respectfully request[s] the opportunity to review and provide more detailed information regarding sufficient bases to withhold or redact those privileged or exempt records." Office's Position Statement, R.R. at 26a (citing *Pennsylvania State System of Higher Education v. Association of State College and University Faculties*, 142 A.3d 1023 (Pa. Cmwlth. 2016)).[12] As in *Brelje*, we conclude that the Office properly requested an extension of time to identify and review responsive records in the event its insufficient specificity argument did not prevail. Thus, as we did in *Brelje*, we will remand this matter to the OOR to allow the Office reasonable time to identify responsive records and claim specific applicable exemptions.

---

329 A.3d 873, 882 (Pa. Cmwlth. 2025). Indeed, in *Greim*, we rejected the Pennsylvania State Police's argument that a request was overly burdensome because it would force the agency to "search into the email records of its 6,000 employees for any of the 14 search terms." *Greim*, 329 A.3d at 881.

[12] The Office reiterates this request in its brief to this Court. *See* Office's Brief at 8.

## CONCLUSION

For the reasons set forth above, the July 15, 2024 final determination of the OOR is reversed, and this matter is remanded to the OOR for proceedings consistent with the foregoing memorandum opinion.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Todd Shepherd and Broad and Liberty, Inc., :
:
:
Petitioners :
:
v. : No. 954 C.D. 2024
:
Pennsylvania Office of the Governor :
(Office of Open Records), :
:
Respondent :

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>May</u>, 2025, the July 15, 2024 final determination of the Office of Open Records (OOR) is REVERSED. This matter is REMANDED and the OOR is ORDERED to provide the Pennsylvania Office of the Governor reasonable time to identify responsive records and claim applicable exemptions, after which the OOR shall issue a new determination from which any aggrieved party may appeal.

Jurisdiction relinquished.

_____
MICHAEL H. WOJCIK, Judge